WO SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Sambrano, | No. CV 11-0119-PHX-GMS (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Sergeant Opferbeck, et al., | |
| Defendants. | |

On January 18, 2011, Plaintiff Anthony Sambrano, who was then confined in the Arizona State Prison Complex-Kingman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. (Doc. 1, 2.) On March 30, 2011, Plaintiff filed a Notice of Change of Address that reflected Plaintiff had been released. (Doc. 5.) In an Order filed April 4, 2011, Plaintiff was given 30 days to either pay the $350.00 filing fee or to show cause why he was unable to pay the fee within 120 days of his release. (Doc. 6.) On April 25, 2011, Plaintiff filed a letter in response to the April 4 Order. (Doc. 7.) In his Letter, Plaintiff stated that he was "applying for leave to proceed *in forma pauperis* without prepayment of costs or fees or the nec[]es[s]ity of giving security therefore." (Id.) He also stated that he had "recently [been] released from the Arizona Department of Corrections" and that he was "unemployed." (Id.) In an Order filed June 24, 2011, the Court found the Letter failed to comply with the Court's April 4 Order. (Doc. 8.) The Court granted Plaintiff another 30 days in which to either pay the $350.00 filing fee or to file a compliant

TERMPS REF

"Response" to the April 4 Order, including being made under penalty of perjury. See 28 U.S.C. § 1746 (oath requirement may be satisfied when a person declares under penalty of perjury that the submission is true and correct and signs and dates the document).

Plaintiff has filed an Application to Proceed *In Forma Pauperis* without prepayment of fees or costs, which he has signed under penalty of perjury. (Doc. 9.) The Court construes the Application as a "Response," which establishes that Plaintiff is currently unable to pay the filing fee for this action.[1] Accordingly, the Show Cause Order will be discharged. The Court will order Defendants Opferbeck, Moyer, Quillman, Casados, Lopez, Fortune, Smoke, Coffey, Simpson, Knippel, Dunnington, Feller, and Rosemary R.N. to answer Counts I, II, III, IV, V, and VIII of the Complaint and will dismiss the remaining claims and Defendants without prejudice.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.[2] 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

---

[1] According to the website for the Arizona Department of Corrections, Plaintiff was released on March 18, 2011. See http://www.azcorrections.gov/Inmate_DataSearch/results_Minh.aspx?InmateNumber=133736&LastName=SAMBRANO&FNMI=A&SearchType=SearchInet (Last visited July 13, 2011).

[2] Because Plaintiff was a "prisoner" within the meaning of the Prison Litigation Reform Act (PLRA) when he filed this action and is proceeding *in forma pauperis*, his Complaint is subject to screening by the Court.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

**II.  Complaint**

Plaintiff alleges eight counts for excessive use of force, denial of constitutionally adequate medical care, and due process. Plaintiff sues the following Phoenix Police Officers: Sergeant Opferbeck, Michael Moyer, Daniel Quillman, Albert Casados, Lourdes Lopez, Mercedes Fortune, James Smoke, and Ethan Coffey (collectively, police Defendants). He also sues the following Phoenix Fire Department firefighters or paramedics: Captain Robert R. Simpson, Jason E. Knippel, Corrine M. Dunnington, and Donna J. Feller (collectively, fire department Defendants). He further sues the following employees of the Maricopa County Hospital: Daniel M. Caruso, Dr. Erin Kelly, Marc R. Matthews, Elizabeth Estrada, M. Sampter (or Sumpter), Vu Nauyen (or Vu Nawyen), Licensed Practical Nurse (LPN) Reginald Herd, Registered Nurse (RN) Rosemary, and Frances Hernandez, M.A (collectively, hospital

Defendants). Plaintiff seeks injunctive, compensatory, and punitive relief.

Plaintiff alleges the following facts in his Complaint: On the evening of January 25, 2009, Plaintiff was surrounded by the police Defendants as he left a restaurant. They ordered Plaintiff to stop and get on the ground. Plaintiff complied with the orders by laying on the ground and holding his hands behind his back. Plaintiff was ordered not to move and warned that the officers were pointing tasers at him. "Officer John Doe" cuffed one wrist, but as he was preparing or attempting to cuff the other, he jerked Plaintiff's arm and yelled at Plaintiff to stop resisting. (Doc. 1 at 3.)[3] The surrounding officers began kicking Plaintiff and dropping down on one knee on Plaintiff's spine, neck, and head. The officers stopped after Plaintiff yelled they were killing him. Plaintiff's other wrist was cuffed and he was raised to a seated position. Plaintiff was in a cold sweat, felt dizzy, felt "extreme pain" all over his body, his chest felt heavy, he had difficulty breathing, and both eyes were swollen.[4] (Id. at 4A.) Plaintiff asked the officers why they had attacked him, but they told him to shut-up and to not be a baby. Plaintiff pleaded for medical attention and was told that paramedics would be called.

Fire department Defendants Simpson, Knippel, Dunnington, and Feller arrived but indicated that nothing was wrong with Plaintiff and told the police officers that Plaintiff was faking to avoid jail. Plaintiff asked Captain Simpson to have him taken to a hospital or given oxygen. Simpson said that Plaintiff had to first sign a consent to treatment. Plaintiff signed the form, which he was unable to read due to his swollen eyes, but rather than providing treatment or taking him to the hospital, the paramedics left.

Two police officers then dragged Plaintiff by his elbows, with his hands cuffed behind

---

[3] Plaintiff submitted several pages that were not numbered. The Court refers to those pages by their sequential order and an "A" to distinguish them from the numbered pages that are part of the court-approved form complaint.

[4] As discussed below, Plaintiff was later found to have broken ribs and a collapsed lung that required insertion of a chest tube.

him, to a police cruiser and transported him to the jail.[5]  The officers dragged Plaintiff from the cruiser to be booked, but booking officers refused to do so due to Plaintiff's injuries and said that Plaintiff needed to go to a hospital.  The officers again dragged Plaintiff by the elbows back to the cruiser and eventually transported him to Maricopa County Hospital, where they again dragged him from the cruiser into the hospital.[6]

In the hospital, the officers told hospital staff that "nothing" was wrong with Plaintiff and that he was faking.  Defendant Nurse Rosemary told Plaintiff to lay flat on the gurney, despite Plaintiff's repeated protestations that he was unable to do so due to the pain and difficulty breathing and he asked her for asked for oxygen.  Rosemary repeatedly told Plaintiff to shut-up and stop acting like a baby because he was disturbing other patients.  When Plaintiff continued to cry out, Rosemary moved to an isolated room with an officer; the officer also told Plaintiff to shut-up because he was starting to make the officer mad.  During the night, Rosemary came in to taunt Plaintiff and call him names.  After a shift change, Dr. Kelly came into the room and told Nurse Rosemary to start two IVs because Plaintiff was in shock and "fixin to die on you." (Doc. 1 at 7.)  Rosemary started the IVs.  Dr. Kelly told Plaintiff she was going to give him something to knock him out so that she could insert a chest tube because his right lung had collapsed.  Plaintiff also had broken ribs.  After the tube had been inserted, Plaintiff was able to breathe.  He was transported to the Lower Buckeye Jail infirmary, where he remained for several days, and was heavily medicated by IV morphine and pills until the chest tube was removed.

## III. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state

---

[5] Plaintiff contends that these officers repeatedly parked farther away than necessary and then dragged Plaintiff back and forth into the jail and then the hospital.

[6] Plaintiff alleges that they took him to the wrong hospital at first because they did not know the location of Maricopa County Hospital.

law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

Further, to state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001). In addition, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045.

### A. Caruso, Matthews, Estrada, Sampter, Nauyen, Herd, & Hernandez

Plaintiff sues hospital Defendants Caruso, Matthews, Estrada, Sampter, Nauyen, Herd, and Hernandez. Plaintiff fails to allege any facts to support that Defendants Caruso, Matthews, Estrada, Sampter, Nauyen, Herd, and Hernandez violated any constitutional right. Therefore, he fails to state a claim against any of these Defendants and they will be dismissed.

### B. Excessive Force

Plaintiff designates Count I as a claim for excessive use of force and Count II as a claim for violation of the cruel and unusual punishment clause of the Eighth Amendment. He designates Count IV as a claim for violation of contemporary standards of decency based in

TERMPS REF

part on the excessive use of force.[7] The Court treats these counts, or portion thereof, as asserting a claim for excessive use of force against the police Defendants.

A claim that police officers used excessive force in the course of an arrest arises under the Fourth Amendment, rather than the Eighth Amendment. See Graham v. Connor. 490 U.S. 386, 395 (1989); Hooper v. County of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011); Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010). To state an excessive force claim, a plaintiff must allege facts to support that the force used by police officers was objectively unreasonable under the circumstances. Graham, 490 U.S. at 395. The pertinent question is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Id. at 397. An arrestee's resistance may support the use of force even if officers lack probable cause for an arrest. Brooks v. City of Seattle, 599 F.3d 1018, 1022 (9th Cir. 2010). Nevertheless, the existence of probable cause may be considered as a part of the totality of the circumstances. Id. Other relevant circumstances include the severity of the suspected crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest. Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003); see Bryan, 2010 WL 4925422, at *14-17.

Plaintiff sufficiently states a claim against the named police Defendants for use of excessive force and these Defendants will be required to respond to Plaintiff's excessive force allegations in the Complaint. However, Plaintiff's allegations against the unnamed police officers who repeatedly dragged him by his elbows will be dismissed without prejudice for two reasons. First, Plaintiff did not include any fictitiously-named John Does as Defendants. Second, even if he had, Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and

---

[7] Plaintiff otherwise asserts a violation in Count IV based on the denial of medical care. This portion of Count IV is addressed below.

TERMPSREF

complaint or amended complaint upon an anonymous defendant. The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, a plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff may attempt to learn the identities of the Doe officers whom he believes violated his constitutional rights and thereafter seek leave to amend his Complaint to name them.

### C. Medical Care

Plaintiff designates Counts III, IV (in part), V, and VIII as claims for denial of constitutionally adequate medical care. To state a claim for denial of constitutionally adequate medical care, a plaintiff must allege facts to support that he has or had a serious medical need and that a particular defendant acted with deliberate indifference to that need. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003). To allege a serious medical need, a plaintiff must set forth facts to support that the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)). A plaintiff must also allege facts to support that a defendant was deliberately indifferent to a serious medical need. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference may occur if "prison officials deny, delay or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). Mere negligence, however, "in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Lopez, 203 F.3d at 1132 (quoting Hutchinson, 838 F.2d at 394). Further, a delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless

the plaintiff can show that the delay in treatment harmed him. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A difference in medical opinion also does not amount to deliberate indifference. See Toguchi, 391 F.3d at 1058. Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. Id.

In Counts III, IV (in part), and V, Plaintiff alleges that all of the Defendants acted with deliberate indifference to his serious medical needs. In Count VIII, he alleges that the fire department Defendants ignored and failed to treat his obvious injuries or to have him transported to the hospital.

Plaintiff sufficiently alleges facts to support that he had obvious and serious injuries following his arrest and that despite obvious serious injuries and his repeated entreaties for medical attention, the police and fire department Defendants ignored his injuries and/or delayed providing or obtaining medical care. Plaintiff also sufficiently alleges that Nurse Rosemary repeatedly disregarded his obvious injuries and placed him in an isolated room so that his entreaties for assistance would not disturb other patients in the emergency room. These Defendants will be required to respond to Count III.

However, Plaintiff fails to allege facts to support that Dr. Kelly acted with deliberate indifference to his serious medical needs. Indeed, Plaintiff alleges that Defendant Kelly promptly treated him after seeing him. Because Plaintiff fails to allege facts to support that Dr. Kelly acted with deliberate indifference to his serious medical needs, Counts III, IV (in part), V, and VIII will be dismissed against Kelly.

**D.    Due Process**

In Counts VI and VII, Plaintiff contends that the excessive use of force and deliberate indifference to his serious medical injuries also violated his due process and equal protection rights. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

TERMPS REF

specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment]." Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851, 853 (9th Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)); see Albright v. Oliver, 510 U.S. 266, 273 (1994). Because Plaintiff's excessive force and medical claims are covered by specific constitutional provisions under the Fourth and Eighth Amendments, Plaintiff cannot state due process claims based on the same facts.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; see City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). A state practice that interferes with a fundamental right or that discriminates against a suspect class of individuals is subject to strict scrutiny. Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976); see City of Cleburne, 473 U.S. at 441. Absent allegations that he is a member of a suspect class, or that a fundamental right has been violated, a plaintiff must allege facts to support that he has been intentionally treated differently from others who are similarly situated without a reasonable basis therefor. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Conclusory allegations do not suffice. See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

Plaintiff fails to allege facts to support that he is a member of a suspect class or the violation of a fundamental right. He also fails to allege facts to support that he was treated differently than similarly-situated persons. Accordingly, Plaintiff fails to state a claim for violation of his equal protection rights.

For the reasons discussed, Counts VI and VII will be dismissed for failure to state a claim.

**IV.	Claims for Which an Answer Will be Required**

As noted above, Plaintiff sufficiently alleges facts to support that the police Defendants used excessive force against him. He also sufficiently alleges facts to support that the police

and the fire department Defendants and Maricopa County Registered Nurse Rosemary acted with deliberate indifference to his serious medical needs. These Defendants will be required to respond to Counts I-V and VII.

**V.     Warnings**

   **A.     Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

   **B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

   **C.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

   **D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed *In Forma Pauperis* is construed as a

"Response" to the Court's April 4, 2011 Show Cause Order, doc. 6. (Doc. 9.)

(2) The April 4, 2011 Show Cause Order, doc. 6, is **discharged** based upon Plaintiff's Response, doc. 9.

(3) Counts VI and VII and Defendants Caruso, Kelly, Hernandez, Matthews, Estrada, Sampter, Nauyen, and Herd are **dismissed** without prejudice.

(4) Defendants Opferbeck, Moyer, Quillman, Casados, Lopez, Fortune, Smoke, Coffey, Simpson, Knippel, Dunnington, Feller, and Maricopa County Hospital Registered Nurse Rosemary must answer Counts I-V and VIII.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Opferbeck, Moyer, Quillman, Casados, Lopez, Fortune, Smoke, Coffey, Simpson, Knippel, Dunnington, Feller, and Maricopa County Hospital Registered Nurse Rosemary.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30**

**days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)    **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11)    Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)    This matter is referred to Magistrate Judge Lawrence O. Anderson pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 14th day of July, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge

TERMPS REF